UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

GAIL WILLIAMS,

                                    Plaintiff,

               -vs-                                         09-CV-280JTC

METROPOLITAN LIFE INSURANCE
COMPANY c/o Metlife Disability, VERIZON
COMMUNICATIONS, INC. as Plan Sponsor
and Employer, and VERIZON EMPLOYEE
BENEFITS COMMITTEE and/or Chairperson
of the VEBC, as Plan Administrator,

                                    Defendants.

─────────────────────────────────

        This case was transferred from the docket of the Hon. Richard J. Arcara, United

States District Judge, to that of the Hon. John T. Curtin, Senior United States District

Judge by an order filed November 5, 2010 (Item 54).  It is presently before the court on

the defendants' motions for summary judgment (Items 31, 36).


                          **BACKGROUND and FACTS**[1]

        Plaintiff was employed as a Customer Account Manager ("CAM") for Verizon

Communications, Inc. ("Verizon") from 2000 until August 2005 (Item 44, ¶ 1).  On or

about August 17, 2005, she became unable to continue to perform the duties of her

position due to injuries she suffered in 2002 when the trunk door of a sport utility vehicle

─────────────────────

        [1]  The factual statement is taken from the complaint (Item 1), the parties' statements pursuant to
Local Rule 56.1 (Items 33, 38, 44), and the Administrative Record in this case, filed under seal as Exhibit
A to the affidavit of Cindy Broadwater (Item 39).  The Administrative Record includes the Summary Plan
Description and all documents which were before the administrator when it considered plaintiff's claim for
benefits.  References to the Administrative Record are denoted by "AR" and the page number.

closed on her head, knocking her to the ground. *Id., ¶ 2.* Plaintiff was diagnosed with cerebral concussion, post-concussion syndrome, and mild traumatic brain injury (Item 1, ¶ 10). She applied for and received 12 months of short-term disability ("STD") benefits pursuant to Verizon's employee welfare benefit plan. *Id., ¶ 11.* Thereafter, plaintiff applied for and received an additional 12 months of long-term disability ("LTD") benefits under the plan, through August 17, 2007 (AR 1067). Defendant Metropolitan Life Insurance Company ("MetLife") determined that she was totally disabled and, in accordance with the plan, unable to earn more than 80 percent of her pre-disability compensation at her own occupation (AR 1068).

On February 12, 2007, MetLife notified the plaintiff that it would evaluate her claim under a different standard of disability that applied after payment of 24 months of short and/or long term benefits (AR 1055). According to the plan, a person is totally disabled after the 24-month period if "due to sickness, pregnancy or accidental injury" she is receiving appropriate medical care and is "unable to earn more than 60% of [her] annual benefits compensation from any employer at any gainful occupation for which [she is] reasonably qualified, taking into account [her] training, education, experience and annual benefits compensation." *Id.*

MetLife forwarded plaintiff's medical records for review by two independent physician consultants. Dr. Derrick Bailey, board certified in internal medicine, stated in a report that plaintiff complained of numerous symptoms, including nausea, headaches, dizziness, phonophobia, photophobia, sleep dysfunction, irritability, difficulty reading, disequilibrium, and feelings of confusion (AR 929). Dr. Bailey also stated that plaintiff's symptoms were predominantly self-reported and that he saw no physical support for an

inability of the plaintiff to return to work (AR 928).  Likewise, Dr. Kevin Murphy, a

licensed psychologist with a specialty in neuropsychology, stated that the medical

records did "not support the presence of significant cognitive impairment" that would

prevent the plaintiff from returning to work (AR 924).  In a letter dated August 17, 2007,

MetLife notified plaintiff that her claim for LTD benefits had been denied because she

no longer met the definition of disability in the plan (AR 862).  Defendant stated that

the medical information plaintiff submitted did "not support a functional impairment from

a medical condition or a cognitive impairment of a severity that would prevent [her] from

returning to work" (AR 864).

Plaintiff appealed the denial of LTD benefits and submitted additional medical

records from her health care providers.  These records included a letter from one of her

treating physicians, Dr. Gary Wang, in which he stated that plaintiff had an intolerance

for "noise, prolonged reading or focusing and occasional anxiety/panic," and  was only

able to perform "part time light and sedentary work" (AR 589).  Dr. Lisa Keenan,

plaintiff's treating psychologist, stated in a letter that plaintiff "is unable to sustain the

mental energy necessary to complete an 8-hour day" due to "visual impairment, poor

attentional skills, reduced retention of information and increased irritability" (AR 591).

Following receipt of the records, MetLife requested a review by two additional

independent consultants.  Dr. Albert Fuchs, board certified in internal medicine, stated

that plaintiff's medical records do not support any functional limitations and concluded

that her "subjective reports of fatigability and difficulty with memory and concentration

have not been reproduced on clinical neuropsychological testing" (AR 567).  Dr. Peter

Mosbach, a neuropsychologist, noted that plaintiff had undergone a vocational

3

evaluation and scored in the 95.99[th] percentile on the Wonderlic Personnel test, equivalent to a score of 125 on the Wechsler Adult Intelligence Scale (AR 453). Additionally, she was able to type 31 words per minute at 99 percent accuracy and to word process paragraphs read to her (AR 552).  Dr. Mosbach opined that while plaintiff "has numerous subjective complaints, . . . there is no objective evidence of functional impairments from a cognitive or psychological perspective" (AR 553).

On November 29, 2007, Dr. Keenan submitted a Mental Residual Functional Capacity Assessment completed by the Social Security Administration ("SSA") on April 2, 2007 (AR 517-534).  The SSA had determined that while plaintiff could perform some work-related tasks, she could not sustain these activities "for any meaningful period of time" (AR 533).  Accordingly, plaintiff was found to be disabled and was awarded disability benefits by the SSA retroactive to December 1, 2005 (AR 269).  The functional assessment was reviewed by Dr. Mosbach, who found no new evidence of "objective cognitive or psychological symptoms that would support functional limitations in the ability to work full-time" (AR 497).

In a letter dated December 21, 2007, MetLife notified plaintiff that it was upholding its prior denial of LTD benefits because the medical evidence did not contain information sufficient to support a continuous impairment that would prevent her from engaging in "a sedentary occupation" (AR 494).

On February 8, 2008, plaintiff advised MetLife that she was appealing the adverse determination (AR 486).  Again, MetLife requested review of plaintiff's medical records by independent consultants.  Dr. Philip Marion, board certified in physical medicine and rehabilitation, opined that there was "no objective impairment" to support

4

plaintiff's occupational restrictions and limitations (AR 416). Dr. Alexander Chervinsky,

a clinical neuropsychologist, also reviewed plaintiff's records and noted that her scores

on the vocational assessment from 2007 were within normal limits (AR 423). He also

concluded that the records provided did not offer support for plaintiff's complaints of

cognitive dysfunction (AR 423).

In a letter dated June 5, 2008, MetLife denied plaintiff's final appeal stating that,

based on its review, the medical information submitted did not support functional

limitations that would preclude plaintiff from performing "any occupation" beyond

August 17, 2007 in accordance with the plan's definition of disability (AR 402).

Plaintiff filed the complaint in this action, pursuant to the Employee Retirement

Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), on March 27, 2009

(Item 1). She brought suit against MetLife, the issuer of the group LTD insurance policy

issued to Verizon. *Id.,* ¶¶ 5, 7. She also named Verizon Communications, Inc. as a

defendant as the plan sponsor, *id.,* ¶ 6, and the Verizon Employee Benefits Committee

as the plan administrator. Plaintiff alleged that defendants failed to take into account

that in order not to be considered disabled under the plan she must be able to return to

work in some gainful occupation wherein she can earn greater than sixty percent of the

annual compensation earned by her in her position with Verizon. As such, plaintiff

contends that defendants must show that she is able to earn in excess of approximately

$83,500 per year in order to find her not disabled. Item 1, ¶ 16.

The Verizon defendants filed their answer on June 1, 2009 (Item 9). MetLife

filed its answer on June 5, 2009 (Item 11). On June 7, 2010, the defendants filed

motions for summary judgment (Items 31, 36). Plaintiff filed a response to the motions

5

on July 23, 2010 (Items 42-44).  MetLife filed a reply on September 24, 2010 (Item 51).

The court declined to hear oral argument.  For the reasons that follow, the motion of the

Verizon defendants is granted in part and denied in part and the motion of MetLife for

summary judgment is denied.  The matter must be remanded for reconsideration of

plaintiff's claim in accordance with this Decision and Order.


**DISCUSSION**

**1.  Propriety of Verizon as a Defendant**

Plaintiff has sued her former employer, Verizon Communications, Inc., as the

"Plan Sponsor and Employer" (AR 32).  Verizon has moved to dismiss the action

against it on the grounds that it is not a proper defendant in an action seeking disability

benefits under an ERISA plan.  A claim for recovery of benefits under ERISA §

502(a)(1)B) may be brought only against a covered plan, its administrators or its

trustees in their capacity as such.  *See Chapman v. ChoiceCare Long Island Term

Disability Plan,* 288 F.3d 506, 509 (2d Cir. 2002); *Leonelli v. Pennwalt Corp.*, 887 F.2d

1195, 1199 (2d Cir. 1989).  Accordingly, the motion for summary judgment of Verizon

Communications, Inc., plaintiff's employer, is granted in part and this defendant is

dismissed from the action.


**2.  The Standard of Review**

Plaintiff contends that the court should consider defendants' decision to deny

benefits under a *de novo* standard of review.  Plaintiff does not contest the fact that the

plan vests the claims administrator with discretionary authority to determine eligibility for
and entitlement to benefits.  *See* Item 43, p. 4.  The plan states that the Verizon
Employee Benefits Committee ("VEBC") or its delegate has the discretionary authority
to interpret the plan based on applicable law and to determine whether a claimant is
eligible for benefits (AR 33-34).  Plaintiff notes, however, that the plan lists
UnumProvident as the delegated claims administrator (AR 33).  Defendant explains
that, in March 2006, Verizon contracted with MetLife to act as claims administrator
pursuant to an administrative services agreement ("ASA") (AR 50-75).  According to the
terms of the plan itself, the ASA is a "plan document" (AR 32).  Plan documents include
"pertinent contracts between Verizon and the claims administrators and other firms that
provide services under the plans."  *Id.*  Accordingly, the court finds that MetLife is
VEBC's delegate as claims administrator.  As it is undisputed that the administrator is
vested with discretionary authority to make final determinations regarding eligibility and
benefits, the decision to deny plaintiff's claim for benefits is reviewed under the
deferential arbitrary and capricious standard.  *See Firestone Tire and Rubber Co. v.
Bruch,* 489 U.S. 101, 115 (1989).

"[W]here the ERISA plan confers upon the plan administrator discretionary
authority to 'construe the terms of the plan,' the district court should review a decision
by the plan administrator under an excess of allowable discretion standard."  *Frommert
v. Conkright,* 535 F.3d 111, 119 (2d Cir. 2008) (citing *Nichols v. Prudential Ins. Co. of
America,* 406 F.3d 98, 108 (2d Cir. 2005) (noting that the proper standard when a plan
vests the administrator with discretionary authority is "abuse of discretion")).  Under such

a standard, an administrator abuses its discretion only when the administrator's actions are arbitrary and capricious.  *See, e.g., Guglielmi v. Northwestern Mut. Life Ins. Co.*, 2007 WL 1975480, at \*4 (S.D.N.Y. July 6, 2007) (quoting *Firestone Tire & Rubber Co.*, 489 U.S. at 115).  Because this is a "highly deferential standard of review, an administrator's decision should only be disturbed if it is without reason, unsupported by substantial evidence or erroneous as a matter of law, considering the relevant factors of the decision."  *Guglielmi,* 2007 WL 1975480, at \*4 (citations and internal quotations omitted).  A district court must look to the administrative record as a whole in deciding whether the plan administrator's decision was without reason, unsupported by substantial evidence, or erroneous as a matter of law.  *See, e.g., Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 19 (1st Cir. 2003) (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)).

**3.  Defendants' Motion for Summary Judgment**

Defendants VEBC and MetLife have moved for summary judgment dismissing the action.  They contend that the decision to deny plaintiff's claim for LTD benefits, based on the opinions of six independent medical consultants, was reasonable and supported by substantial evidence in the administrative record.  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no material fact issues exist for trial.  *See Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 330-31 (1986).  Once this showing is made, "[t]o defeat

summary judgment, the non-movant must produce specific facts" to rebut the movant's

showing and to establish that there are material issues of fact requiring trial.  *Wright v.*

*Coughlin,* 132 F.3d 133, 137 (2d Cir. 1998) (citing *Celotex*, 477 U.S. at 322).  In

determining whether a genuine issue of material fact exists, a court must view the facts

in the light most favorable to the non-moving party and make all reasonable inferences

in that party's favor.  *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712,

720 (2d Cir. 2010).

As stated above, the definition of disability under the LTD plan provides:

"due to sickness, pregnancy or accidental injury, you are receiving appropriate care and

treatment from a doctor on a continuing basis and . . . [a]fter the first 24-month period,

you are unable to earn more than 60% of your annual benefits compensation from any

employer at any gainful occupation . . ." (AR 48).  Plaintiff asserts that cognitive

impairments preclude her from performing her past work or any work that would provide

her with sixty percent of her prior income.  Defendants contend that an evaluation of

plaintiff's ability to earn at least sixty percent of her prior income is unnecessary, as she

has submitted no objective medical evidence that she is disabled.

The plan provides that documentation of a medical condition includes "medical

evidence from you and/or your doctor" and the fact that "you are approved to receive

social security disability benefits" (AR 23).  Plaintiff submitted letters from her treating

providers, a functional assessment from the SSA, and proof that she was approved to

receive social security disability benefits.  Defendant contends that plaintiff submitted

no "objective" medical evidence of cognitive deficits, and determined that she was able

9

to return to sedentary work.

In taking the position that plaintiff failed to submit objective medical evidence to support her claimed functional limitations, defendants have simply ignored the definition of disability in the LTD plan. The plain language of the plan provides that, in order to be found disabled, the claimant must be unable to earn more than sixty percent of her previous income in "any occupation." Plaintiff has submitted the opinions of her treating medical professionals that she cannot return to her previous position and that she can work only part-time. Defendants' medical experts opined that plaintiff had not presented objective medical evidence of her cognitive deficits, only self-reported symptoms, and concluded that plaintiff was able to return sedentary work. However, defendants' experts did not consider the vocational requirements of plaintiff's CAM position and whether plaintiff was able to return to her position as a CAM. There is no evidence to suggest that plaintiff is able to return to her previous position as a CAM or earn in excess of sixty percent of her pre-disability income.

Where the administrator interprets a plan in a manner inconsistent with its plain language, its actions may well be found to be arbitrary and capricious. *See Pulvers v. First UNUM Life Ins. Co.,* 210 F.3d 89, 93 (2d Cir. 2000), *abrogated on other grounds by Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008). Here, the plan provides that a person is disabled if he or she is unable to earn a specific percentage of pre-disability income in any occupation. Under these circumstances, the administrator should consider the claimant's functional abilities and assess whether she is able to work in a position that provides such earning capacity. Failure to do so is a procedural irregularity that should be taken into consideration in determining whether a plan

10

administrator abused its discretion in denying the claim for benefits.  *See Maxwell v. Metropolitan Life Ins. Co.*, 2009 WL 2868234, *8 (N.D.N.Y. September 01, 2009) ("Defendants could have, but failed to, investigate Plaintiff's functional abilities prior to his termination. The Court finds this significant in light of the fact that Plaintiff is deemed disabled under the Plan if he could not have engaged in gainful employment, for which he is reasonably qualified (earning more than 60% of his Indexed Predisability Earnings).").

Additionally, the plan required plaintiff to apply for Social Security disability benefits so that the payment of STD or LTD benefits could be offset by any social security award (AR 23).  After plaintiff successfully won social security benefits and was compelled to repay STD benefits, defendant discounted the finding of disability made by the SSA.  This has been considered a significant factor, suggestive of procedural unreasonableness, that the reviewing court may consider in determining whether the decision to deny benefits was arbitrary and capricious.  *See Glenn,* 554 U.S. at 118.

Accordingly, the court finds that defendants have failed to sustain their burden on the motion for summary judgment.  Plaintiff has raised a genuine issue of fact as to whether defendants' decision to deny her LTD benefits was an abuse of discretion.

## CONCLUSION

Based on the foregoing, the motion for summary judgment of MetLife (Item 31) is denied.  The motion of the Verizon defendants (Item 36) is granted in part, and Verizon Communications, Inc. is dismissed from the action.  The matter is remanded for

11

reconsideration of plaintiff's claim for LTD benefits in accordance with this Decision and

Order.

So ordered.


_____\s\ John T. Curtin____
JOHN T. CURTIN
   United States District Judge

Dated:        3/21                2011
              Buffalo, New York